UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MICHAEL S. JOHNSON,
CESAR DELEON,
GLENN KIRVAN, and
GREGG PHILLIPS,

           Plaintiff,

     v.                                              Case No. 22-cv-022-bhl

KEVIN A. CARR, SARAH COOPER,
DYLON RADTKE, MICHELLE HAESE,
JOHN KIND, DANIEL CUSHING,
MARY TALLIER, JAMES ELSINGER,
TONIA ROZMARYNOSKI, JODI PERTTU,
RYAN BAUMAN, DR. BREEN,
DR. PENNLBERG, DR. WOLFE, and
KATHY BARKER,

           Defendants.

---

## SCREENING ORDER

---

Plaintiffs Michael Johnson, Cesar Deleon, Glenn Kirvan, and Gregg Phillips are inmates currently serving state prison sentences at the Green Bay Correctional Institution who, representing themselves, have filed a complaint under 42 U.S.C. §1983, alleging that their civil rights were violated. This matter comes before the Court on Plaintiffs' motions for leave to proceed without prepaying the full filing fee and to screen the complaint.

### MOTIONS TO PROCEED WITHOUT PREPAYING THE FILING FEE

Plaintiffs have requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). Each prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1); *Boriboune v. Berge*, 391 F.3d 852,

855-56 (7th Cir. 2004). Plaintiffs have filed certified copies of their prison trust account statements for the six-month period immediately preceding the filing of their complaint, as required under 28 U.S.C. §1915(a)(2). They have also been assessed and paid initial partial filing fees. Accordingly, Plaintiffs' motions for leave to proceed without prepaying the filing fee will be granted.

### SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."

*Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal quotations omitted).

ALLEGATIONS OF THE COMPLAINT

**1. Alleged Conditions of Confinement**

Plaintiffs explain that they are housed in the restrictive housing unit (RHU) at the Green Bay Correctional Institution. According to Plaintiffs, the conditions of confinement in the RHU "are extremely harsh, malicious and sadistic." Plaintiffs assert that they are subjected to excessive noise twenty-four hours per day, with inmates screaming and kicking and banging their doors, desks, and metal vents. They explain that they get limited or no recreation time and that the outside recreation cage is nothing more than a "human size dog kennel," which contains only a deflated basketball. Because the cage is outside, it is too cold to use in the winter and frequently too wet to use in the spring and fall, which means they are confined to their cells twenty-four hours per day for weeks at a time. Plaintiffs also assert that they live in near total isolation with their only human contact coming from guards during rounds. They explain that their day consists of staring out a window at a wall. Dkt. No. 1 at 7.

Plaintiffs also note that they are required to wear full mechanical restraints when using the law library computer and that the restraints are extremely tight and dig into their wrists and ankles. They are allowed no religious services and are merely given religious texts and told to "figure it out" on their own. According to Plaintiffs the air quality is very poor because Defendants Lieutenant Tonia Rozmarynoski and Captain James Elsinger use OC spray on mentally ill inmates

day and night. Plaintiffs explain that they can "taste, feel, and smell the O.C. all the time" and it makes them "choke, cough and gag daily." Dkt. No. 1 at 8

Further, Plaintiffs are allowed only two, fifteen-minute calls per week, and if they are unable to connect after two attempts, their phone time is canceled. As a result of this policy, Plaintiffs assert that they frequently go months without speaking to family. Plaintiffs explain that Defendants Jodi Perttu, Elsinger, and Rozmarynoski refuse to provide more phone access because Defendant Kathy Barker, who is in charge of giving inmates phone access, has stated that it is too much work for her. Plaintiffs also explain that they are limited to one towel per week, which means they dry their bodies with the same towel they wipe their floors and shower stalls with, which has resulted in many of them developing skin rashes and infections. Plaintiffs note that the shower drains are dirty, and they have been bitten by spiders and flies that come out of the drain. Their cells are also allegedly heavily stained with dried feces, urine, snot, and semen, which cannot be washed away. Plaintiffs state that the tiers, which they have to pass through when transported to the library or recreation, are even more "disgusting" with inmates throwing urine and feces out of their cell doors. Finally, the temperatures are allegedly very extreme, with it being so hot in the summer that it is difficult to breathe.

Plaintiffs state that they have complained to Defendants Warden Dylon Radtke, Perttu, Elsinger, and, Rozmarynoski, only to be told there is nothing that can be done.

## 2. Alleged Inadequate Mental Health Treatment

Plaintiffs, all of whom have been diagnosed with mental illness, allege that "inmates being housed in the Restrictive Housing Unit are being denied adequate mental health treatment." According to Plaintiffs, Defendant Dr. Breen, who is the senior psychological services unit (PSU) worker in the RHU, has decided that Black, Latino, and Native Americans' mental health issues

are behavioral and not caused by mental illness. Plaintiffs also allege that Dr. Breen, Dr. Pennlberg, and Dr. Wolfe arbitrarily change the diagnoses for inmates of color to malingering to prolong their stays in the RHU. They also allegedly downplay or ignore when inmates of color engage in self-harm, resulting in several Black inmates dying from suicide. Plaintiffs assert that, given this antagonistic and hostile environment, mentally ill inmates of color are subjected to excessive force on a daily basis. Plaintiffs assert that, contrary to inmates of color, Caucasian inmates receive the best mental health treatment available. Dkt. No. 1 at 10-11.

**3. Alleged Unequal Treatment in Discipline**

Plaintiffs assert that they and other inmates of color are being treated differently than Caucasian inmates in recommendations, referrals, and placements in disciplinary separation and administrative confinement. According to Plaintiffs, Caucasian inmates are allowed to engage in serious institutional misconduct but are almost never referred, recommended, and/or placed in administrative confinement. Plaintiffs assert that the RHU review committee nearly always recommends to Defendants John Kind, Daniel Cushing, and Ryan Baumann that inmates of color be placed in administrative confinement after they complete their disciplinary separation time. The same recommendation is not made for Caucasian inmates even though they were placed in restrictive housing for the same reasons. Dkt. No. 1 at 12-13.

Further, Plaintiffs assert that Kind, Baumann, and Cushing refer inmates of color to long-term administrative confinement (for years) based on fabricated, falsified, and exaggerated claims of STG activities. Plaintiffs assert that Elsinger, Rozmarynoski, Perttu, Kind, Radtke, and Haese discriminate against inmates of color who have been housed for years in administrative confinement with no misconduct, and they prevent those inmates from transitioning out of the RHU. Plaintiffs assert that those few Caucasian inmates who are placed in administrative

5

confinement are released at their first six-month review, while inmates of color are always held indefinitely or for years before being released. Dkt. No. 1 at 12-13.

**4. Alleged Risk from COVID-19 Policies**

Finally, Plaintiffs assert that inmates who have COVID or may have COVID are housed in the RHU along with inmates who are not infected. Plaintiffs assert that they have to use the same community phones, law library computers, handcuffs, books, cleaning supplies, and toenail clippers as inmates who have or may have COVID. Plaintiffs assert that they all have underlying conditions that would make contracting COVID very dangerous to them. Dkt. No. 1 at 15-16.

THE COURT'S ANALYSIS

To state a claim under the Eighth Amendment based on conditions of confinement, a plaintiff "need allege only that prison officials ignored conditions of confinement that failed to meet contemporary requirements of minimal decency." *Wheeler v. Walker*, 303 F. App'x 365, 368 (7th Cir. 2008) (citations omitted). The Seventh Circuit has explained that "prolonged confinement in administrative segregation may constitute a violation of the Eighth Amendment . . . depending on the duration and nature of the segregation and whether there were feasible alternatives to the confinement." *Isby v. Brown*, 858 F.3d 508, 521-22 (7th Cir. 2017) (citations omitted). However, the appellate court has also acknowledged that "conditions are not unconstitutional simply because they are harsh and restrictive; such conditions are part of the penalty that criminal offenders pay for their offenses against society. . . . [T]he Constitution does not mandate that prisons be comfortable." *Id.* at 522 (quoting *Meriweather v. Faulkner*, 821 F.2d 408, 415-16 (7th Cir. 1987)).

At this early stage, Plaintiff's allegations that, for years, they have endured numerous challenging conditions while being confined in administrative confinement is sufficient to state a

claim.  Plaintiffs may proceed against Elisnger, Rozmarynoski, and Barker based on allegations that they caused some of the challenged conditions, such as poor air quality from excessive OC spray use and unnecessarily restrictive phone policies.  They may also proceed against Warden Radtke, Perttu, Elsinger, and Rozmarynoski based on allegations that they ignored Plaintiffs' complaints about the restrictions.

Plaintiffs may not proceed against the remaining Defendants on this claim.  Although they sue Kevin Carr, the Secretary of the Department of Corrections, and Sarah Cooper, the Administrator of the Division of Adult Institutions, the Court cannot reasonably infer from Plaintiffs' allegations that these individuals were personally involved in creating or ignoring the complained of conditions.  *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (holding that the doctrine of respondeat superior cannot be used to hold a supervisor liable for the misconduct of a subordinate).  Similarly, the complaint contains no allegations suggesting that Plaintiffs informed the remaining Defendants of the challenged conditions or that the remaining Defendants had the authority to remedy the challenged conditions.  *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("Public officials do not have a free-floating obligation to put things to rights . . . . Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job.").

The Court will dismiss Plaintiffs' remaining claims for several reasons.  First, Plaintiffs' conclusory allegations of inadequate mental health treatment and unequal placement in administrative confinement fail to state a claim.  While Fed. R. Civ. P. 8(a)(2) requires only a "short and plain statement of the claim," the complaint must contain more than "[t]hreadbare recitals of the elements of a cause of action . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Plaintiffs generally assert that

7

inmates of color receive inadequate mental health care and longer stays in administrative confinement compared to Caucasian inmates, but Plaintiffs provide no factual allegations of their own experiences to support these legal conclusions. They paint in broad strokes referencing "all" inmates of color in the RHU without describing their own interactions with Defendants, how Defendants responded to their acts of self-harm (if there were any) and their particular mental illnesses, or the circumstances of Plaintiffs' initial placements in disciplinary confinement and the circumstances that led to them being placed in administrative confinement following the end of their disciplinary sentence.

The Court suspects Plaintiffs include allegations about their own experiences because they desire to represent "all others similarly situated." However, the Court will not allow Plaintiffs to litigate this case as a class action. Under Fed. R. Civ. P. 23(a)(4), the representative parties must be able to "fairly and adequately protect the interests of the class." Given inmates' lack of legal education and resources, courts have repeatedly declined to allow pro se inmates to represent a class. *See Ghashiya v. Frank*, No. 05-C-0766, 2006 WL 167671, at *3 (E.D. Wis. Jan. 23, 2006). Because Plaintiffs may represent only themselves in this case, their conclusory assertions without supporting factual allegations are insufficient to state a claim.

Further, even if Plaintiffs had included factual allegations specific to them as it relates to these claims, the claims would still have to be dismissed because neither Plaintiffs nor Defendants are properly joined in this case. Under Fed. R. Civ. P. 20(a), persons may join in one action as plaintiffs or be joined in one action as defendants if "any questions of law or fact common to all" plaintiffs or defendants "will arise in the action." Here, each Plaintiff will have unique circumstances regarding his mental illness diagnosis and treatment. For example, the severity of their mental illnesses will differ, their interactions with mental health providers will differ, and the

treatment they received (or did not receive) will differ. Similarly, each Plaintiff will have unique circumstances surrounding his continued placement in administrative confinement. For example, the reasons why they were initially placed in disciplinary segregation will differ, the bases for the recommendations that they be placed in administrative confinement will differ, and the circumstances of subsequent six-month reviews will differ. Finally, the Defendants involved in the inadequate mental illness treatment claim differ from the Defendants involved in the unequal placement in administrative confinement claim. Given these many differences, it is clear that neither all Plaintiffs nor all Defendants participated in the "same transaction or series of transactions or that a question of fact is common to all [plaintiffs or] defendants." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). As such, as it relates to these claims, neither Plaintiffs nor Defendants are properly joined in a single case. If Plaintiffs want to pursue these claims, they must do so in separate cases.

Finally, Plaintiffs' allegations that they face an increased risk of contracting COVID fail to state a claim. Plaintiffs do not allege who is responsible for the policies requiring them to share items, who they complained to about these policies, how their complaints were responded to, whether the items were cleaned or otherwise sanitized before being shared by other inmates, or whether Plaintiffs were able to mitigate the risk by washing their hands or using cleaning supplies. As such, Plaintiffs' allegations fail to provide sufficient notice to Defendants of what they did or did not do to allegedly violated Plaintiffs' rights. *See* Fed. R. Civ. P. 8. Further, given the unique circumstances of each Plaintiff in terms of sharing items, it is unlikely that there are questions of fact common to all Plaintiffs, making it doubtful that Plaintiffs are properly joined in a single action under Fed. R. Civ. P. 20.

Finally, the Court cannot reasonably infer that sharing items with inmates who are or may have COVID exposed Plaintiffs to a *substantial* risk of serious harm. Plaintiffs allege in their complaint that they are isolated in their cells all day, every day with no physical contact with other inmates. The Mayo Clinic has advised that COVID "spreads by respiratory droplets released when someone infected with the virus coughs, sneezes, breathes, signs or talks." *See https://www.mayoclinic.org/diseases-conditions/coronavirus/expert-answers/novel-coronavirus/ faq-20478727*. While the Mayo Clinic acknowledges that the virus can be spread if a person touches a surface with the virus on it and then touches his mouth, nose, or eyes, it emphasizes that "the risk is low" and advises that contracting the virus in this manner can be mitigated by washing one's hands. *Id.* As such, while the sharing of items with inmates who *may* be infected *may* increase the risk of contracting COVID, the Court cannot reasonably infer that such exposure creates a *substantial* risk of contracting COVID. *See Farmer v. Brennan*, 511 U.S. 825, 829 (1994) (holding that a prison official violates the Eighth Amendment when they are deliberately indifferent to "a substantial risk" of serious harm). This claim must be dismissed.

**IT IS THEREFORE ORDERED** that Plaintiffs' motions for leave to proceed *in forma pauperis* (Dkt. Nos. 2, 7, 14, 16) are **GRANTED**.

**IT IS FURTHER ORDERED** that Kevin Carr, Sarah Cooper, Michelle Haese, John Kind, Daniel Cushing, Mary Tallier, Ryan Baumann, Dr. Breen, Dr. Pennlberg, and Dr. Wolfe are **DISMISSED**.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Plaintiffs' complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Dylon Radtke, James Elsinger, Tonia Rozmarynoski, and Jodi Perttu.

**IT IS FURTHER ORDERED** that pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Dylon Radtke, James Elsinger, Tonia Rozmarynoski, and Jodi Perttu shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the agency having custody of 1) Michael Johnson shall collect from his institution trust account the $339.05 balance of the filing fee; 2) Cesar Deleon shall collect from his institution trust account the $342.50 balance of the filing fee; 3) Glenn Kirvan shall collect from his institution trust account the $322.94 balance of the filing fee; and 4) Gregg Phillips shall collect from his institution trust account the $41.58 balance of the filing fee by collecting monthly payments from their prison trust accounts in an amount equal to 20% of the preceding month's income credited to each prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in each account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If a Plaintiff is transferred to another institution, the transferring institution shall forward a copy of this Order along with the Plaintiff's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution,

and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Plaintiffs are further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties, including dismissal of this action.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Plaintiffs may find useful in prosecuting this case.

Dated at Milwaukee, Wisconsin on March 28, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge